**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

**JACOB IRWIN,**

14913 NE Sorrel Dr

Vancouver, WA 98682,

     *Plaintiff,*

  v.

**PAYWARD INTERACTIVE, INC.,**

d/b/a Kraken,

a Wyoming corporation,

106 E Lincoln Way, 4th Floor

Cheyenne, WY 82001,

     *Defendant.*

           **Case No.** 3:26-cv-5395 DWC

**COMPLAINT FOR DAMAGES UNDER THE**
**ELECTRONIC FUND TRANSFER ACT**
**15 U.S.C. § 1693 et seq.**
**(JURY TRIAL DEMANDED)**

**<u>INTRODUCTION</u>**

1.  Plaintiff Jacob Irwin ("Plaintiff") brings this action against Defendant Payward Interactive, Inc., doing business as Kraken ("Kraken" or "Defendant"), for violations of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693 et seq., and its implementing regulation, Regulation E, 12 C.F.R. Part 1005.

2.  On May 9, 2025, unauthorized electronic fund transfers totaling $71,717.65 were made from Plaintiff's Kraken account by third-party criminals who obtained access through physical coercion during a violent robbery in London, England. During the same criminal incident, the assailants deposited $5,000.00 from an unknown third-party source into Plaintiff's Kraken account without Plaintiff's authorization.

3.    Despite timely notification by Plaintiff, Defendant not only failed to investigate the unauthorized transfers as required by federal law, but compounded its violations by placing Plaintiff's account in a negative balance of $4,852.87 related to the criminals' fraudulent deposit, threatening to send the amount to collections, and blocking Plaintiff's access to his own account. Defendant thus transformed Plaintiff from a victim of violent crime into a debtor — punishing the consumer for the acts of criminals while simultaneously refusing to comply with its obligations under the EFTA.

## JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) because this action arises under the Electronic Fund Transfer Act, a federal statute. The EFTA independently confers jurisdiction and authorizes civil actions in any court of competent jurisdiction. 15 U.S.C. § 1693m(g).

5.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because Plaintiff resides in this judicial district. Venue is also proper under 28 U.S.C. § 1391(b)(2) because Defendant conducted business in this district, including maintaining Plaintiff's account and facilitating electronic fund transfers for Plaintiff while he resided in this district.

6.    Defendant is subject to personal jurisdiction in this district because it transacts business nationwide, including in the State of Washington, maintains consumer accounts for Washington residents, and maintained an ongoing business relationship with Plaintiff, a Washington resident, through its platform.

## PARTIES

7.    Plaintiff Jacob Irwin is a natural person and citizen of the State of Washington, residing at 14913 NE Sorrel Dr, Vancouver, WA 98682. Plaintiff maintained an account with Defendant that was established primarily for personal, family, or household purposes.

8.    Defendant Payward Interactive, Inc., doing business as Kraken, is a corporation organized and existing under the laws of the State of Wyoming, with its principal place of business at 106 E Lincoln Way, 4th Floor, Cheyenne, WY 82001. Defendant operates a cryptocurrency exchange under the trade name "Kraken" and maintains consumer accounts through which consumers store, manage, and transfer funds, including cryptocurrency. Defendant's customer service telephone number is (888) 796-8249.

## APPLICABILITY OF THE EFTA TO DEFENDANT

9.    The EFTA applies to "financial institutions," defined as "a State or National bank, a State or Federal savings and loan association, a mutual savings bank, a State or Federal credit

union, or any other person who, directly or indirectly, holds an account belonging to a consumer." 15 U.S.C. § 1693a(9).

10. Kraken directly holds accounts belonging to consumers, including Plaintiff, through which consumers can store, send, receive, and exchange funds, including cryptocurrency. Kraken accepts consumer deposits, maintains account balances, and facilitates electronic transfers of funds between and among its users and to external wallets and accounts.

11. Plaintiff's Kraken account constituted an "account" under the EFTA because it was a "demand deposit, savings deposit, or other asset account" held by a financial institution "established primarily for personal, family, or household purposes." 15 U.S.C. § 1693a(2).

12. The transfers at issue — the liquidation and withdrawal of cryptocurrency from Plaintiff's account — constituted "electronic fund transfers" within the meaning of 15 U.S.C. § 1693a(7) because they were transfers of funds initiated through electronic means.

13. Federal courts have recognized that cryptocurrency exchange platforms that hold consumer accounts are "financial institutions" under the EFTA. See Rider v. Uphold HQ Inc., 657 F. Supp. 3d 491 (S.D.N.Y. 2023) (holding that a cryptocurrency exchange that "directly holds" consumer accounts is a financial institution under the EFTA); Nero v. Uphold HQ Inc., No. 22-cv-1602 (S.D.N.Y. 2023) (same). The same analysis applies to Kraken, which holds consumer accounts and facilitates electronic fund transfers in an identical manner.

14. Although a different judge in Yuille v. Uphold HQ Inc., 22-CV-7453 (S.D.N.Y. Aug. 11, 2023), held that a particular Uphold account was not an EFTA "account" because it was opened primarily for investment, that case is distinguishable. The plaintiff in Yuille specifically opened his account to trade digital assets for profit. Here, Plaintiff used his Kraken account as a personal savings vehicle to hold funds for anticipated health-related expenses and as a long-term financial reserve. Moreover, just twelve days after Yuille, Judge Cote in Nero v. Uphold specifically rejected the reasoning that a profit motive disqualifies a consumer account, observing that consumers routinely hold savings accounts with the expectation that the balance will grow, and that does not convert a personal account into an investment account.

15. In January 2025, the Consumer Financial Protection Bureau (CFPB) issued a proposed interpretive rule confirming that cryptocurrency constitutes "funds" under the EFTA and that accounts holding cryptocurrency are subject to Regulation E's protections. The CFPB's position reflects the regulatory consensus that consumer cryptocurrency accounts fall within the EFTA's scope.

16. Under 15 U.S.C. § 1693g(b), in any action involving a consumer's liability for an unauthorized electronic fund transfer, the burden of proof is upon the financial institution to show that the transfer was authorized. Defendant has made no effort to meet this burden.

17.    To the extent Defendant's Terms of Service or User Agreement contain provisions purporting to waive Plaintiff's rights under the EFTA, limit Defendant's liability, require arbitration of EFTA claims, or otherwise restrict the protections afforded by the statute, such provisions are void and unenforceable. 15 U.S.C. § 1693l ("No writing or other agreement between a consumer and any other person may contain any provision which constitutes a waiver of any right conferred or cause of action created by this subchapter.").

## FACTUAL ALLEGATIONS

### A. Plaintiff's Account with Kraken

18.    At all times relevant to this Complaint, Plaintiff maintained an active account with Kraken through which Plaintiff stored and managed various cryptocurrency assets. The account was established and used primarily for personal, family, or household purposes — not for commercial trading or speculative investment.

19.    Plaintiff used his Kraken account as a personal savings vehicle. Plaintiff deposited funds into the account and held cryptocurrency as long-term personal savings, analogous to a savings account or certificate of deposit. Plaintiff did not engage in frequent or daily trading. Plaintiff's purpose in maintaining the account was to preserve personal wealth for anticipated future health-related expenses and as a long-term personal financial reserve. Following the theft at issue in this case, Plaintiff was forced to resort to crowdfunding (GoFundMe) to cover the health expenses that the stolen funds had been earmarked for, further demonstrating that these funds constituted Plaintiff's personal financial safety net, not a speculative investment portfolio.

20.    Kraken accepted deposits from Plaintiff, held Plaintiff's funds, and facilitated electronic fund transfers on Plaintiff's behalf through its platform.

### B. The Unauthorized Electronic Fund Transfers

21.    On May 9, 2025, at approximately 1:30 AM, Plaintiff was in the Soho district of London, England, during a brief travel layover. After calling a rideshare through the Uber application, Plaintiff was intercepted by an individual posing as his Uber driver. The impersonator knew Plaintiff's name from the application and was driving a vehicle that did not match the one listed in the app.

22.    The impersonator offered Plaintiff a cigarette, which Plaintiff believes was laced with scopolamine, a powerful sedative colloquially known as "Devil's Breath," which is known to render victims compliant and amnesic. Plaintiff began losing consciousness intermittently after exposure to the substance.

23.    While Plaintiff was incapacitated or in an altered state of consciousness, the assailant obtained Plaintiff's phone passcode and gained access to Plaintiff's cryptocurrency

exchange accounts, including his Kraken account. The assailant then executed electronic fund transfers from Plaintiff's Kraken account without Plaintiff's authorization, totaling $71,717.65 in fair market value at the time of the transfers.

24.    Plaintiff's phone was stolen during the incident. Plaintiff's laptop was subsequently remotely wiped. Plaintiff was physically injured when the assailant's vehicle struck him as the assailant fled the scene. Plaintiff was abandoned in an unfamiliar area of London without his phone or means of communication.

25.    The transfers were "unauthorized electronic fund transfers" within the meaning of 15 U.S.C. § 1693a(12) because they were "electronic fund transfer[s] from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer and from which the consumer receives no benefit." The assailant had no actual authority to access or transfer Plaintiff's funds, and Plaintiff received no benefit from the transfers.

26.    Plaintiff did not voluntarily provide access to his account. Access was obtained through drugging and physical coercion during a violent criminal act. The Consumer Financial Protection Bureau (CFPB) has specifically confirmed that "an unauthorized EFT includes a transfer initiated by a person who obtained the access device from the consumer through fraud or robbery." Consent obtained through drugging, physical force, or threat of bodily harm does not constitute "actual authority" under the EFTA.

## C. The Fraudulent Third-Party Deposit

27.    During the same criminal incident, the assailants deposited $5,000.00 into Plaintiff's Kraken account from an unknown third-party source. This deposit was made entirely without Plaintiff's knowledge, authorization, or consent.

28.    Plaintiff did not request, initiate, or benefit from this deposit. The deposit was part of the criminal activity carried out by the assailants and was not a legitimate transaction.

29.    Despite the fraudulent and unauthorized nature of this deposit, Kraken has held Plaintiff personally liable for the consequences of this transaction, as set forth more fully below.

## D. Law Enforcement Reports

30.    Plaintiff promptly reported the robbery and theft to multiple law enforcement agencies:

     a.   The London Metropolitan Police, which assigned Case No. 01/7466849/25;

     b.   The Federal Bureau of Investigation's Internet Crime Complaint Center (IC3), which assigned Complaint ID 15fdcce241f64ee19415279f297e4aec;

c.   The United Kingdom's National Fraud Reporting Centre, which assigned Reference No. NFRC250507346333.

### E. Plaintiff's Timely Notification to Kraken

31.   On or about May 9, 2025 — the same day as the robbery — Plaintiff contacted Kraken to report the unauthorized electronic fund transfers and the fraudulent deposit. Kraken assigned Support Ticket #16564157 to Plaintiff's report.

32.   Plaintiff's notification was timely under 12 C.F.R. § 1005.11(b)(1), which requires that a consumer report an error within 60 days of the transmittal of the periodic statement or account documentation showing the unauthorized transfer. Plaintiff reported the unauthorized transfers the same day they occurred.

33.   Plaintiff's notification was also timely under 15 U.S.C. § 1693g(a), which limits a consumer's liability to $50 if the consumer notifies the financial institution within two business days of learning of the loss.

### F. Kraken's Failure to Investigate, Credit, or Respond

34.   Despite receiving notice from Plaintiff regarding unauthorized transfers totaling $71,717.65, Kraken closed Plaintiff's support ticket without conducting any investigation into the reported unauthorized transfers. Rather than initiating the error resolution procedures required by Regulation E, Kraken informed Plaintiff that "all transactions are final."

35.   Kraken's response that "all transactions are final" was not the product of any investigation into Plaintiff's specific report of unauthorized transfers. It was a blanket policy statement that made no reference to the facts of Plaintiff's case, the nature of the reported unauthorized transfers, or any analysis of whether an error had occurred.

36.   Kraken did not contact Plaintiff to request additional information about the unauthorized transfers.

37.   Kraken did not provisionally credit Plaintiff's account for the amount of the unauthorized transfers, or any portion thereof, as required by 12 C.F.R. § 1005.11(c)(2).

38.   Kraken did not provide Plaintiff with a written explanation of findings based on an investigation, as required by 12 C.F.R. § 1005.11(d). The statement that "all transactions are final" is not an explanation of findings from an investigation; it is a recitation of a terms-of-service provision that purports to waive Plaintiff's federal rights under the EFTA. Any such provision is void and unenforceable under 15 U.S.C. § 1693l.

### G. Kraken's Punitive Actions Against Plaintiff

39.    Rather than investigating the unauthorized transfers and crediting Plaintiff's account as required by federal law, Kraken took the following punitive actions against Plaintiff:

a.  Kraken placed Plaintiff's account in a negative balance of $4,852.87, holding Plaintiff personally responsible for the consequences of the fraudulent $5,000.00 deposit made by the criminal assailants;

b.  Kraken threatened to send the $4,852.87 amount to collections;

c.  Kraken blocked Plaintiff's access to his own account, preventing Plaintiff from viewing his account information, transaction history, or any remaining assets.

40.    These actions victimized Plaintiff a second time — first by the criminals who robbed him, and then by Kraken, which punished Plaintiff for the criminals' unauthorized conduct rather than complying with its obligations under federal consumer protection law.

41.    Kraken's actions are particularly egregious because Plaintiff promptly reported the criminal activity, provided law enforcement case numbers, and clearly identified the transfers and deposit as unauthorized. Kraken had every reason to know that the $5,000.00 deposit was fraudulent and that holding Plaintiff liable was improper.

### H. Plaintiff's Formal EFTA Demand Letter

42.    On March 1, 2026, Plaintiff sent a formal demand letter to Kraken at support@kraken.com, expressly invoking his rights under the EFTA, 15 U.S.C. § 1693 et seq., and Regulation E, 12 C.F.R. § 1005.11. The demand letter referenced Support Ticket #16564157.

43.    The demand letter identified the unauthorized transfers, the fraudulent deposit, the improper collection demand, and the account lockout. It cited the applicable statutory provisions and demanded that Kraken conduct the investigation required by law, provisionally credit $71,717.65 to Plaintiff's account, withdraw the $4,852.87 collection demand, and restore Plaintiff's account access.

44.    On March 6, 2026, Plaintiff sent the same demand letter via USPS Certified Mail, Return Receipt Requested, to Kraken's principal place of business at 106 E Lincoln Way, 4th Floor, Cheyenne, WY 82001.

45.    Kraken did not respond to Plaintiff's demand letter, either by email or mail, within 10 business days or at all.

### I. Plaintiff's Follow-Up Notice of Non-Response

46.    On March 16, 2026, having received no response from Kraken, Plaintiff sent a follow-up letter documenting Kraken's non-response and noting the additional Regulation E violations arising from Kraken's failure to investigate within the timeframe required by 12 C.F.R. § 1005.11(c)(1).

47.    The follow-up letter was sent via email and USPS Certified Mail, Return Receipt Requested.

48.    Kraken did not respond to the follow-up letter.

### J. Regulatory Complaints

49.    Plaintiff has filed the following regulatory complaints in connection with Kraken's conduct:

a.    Consumer Financial Protection Bureau Complaint No. 250528-21127913;

b.    Consumer Financial Protection Bureau second Complaint, filed March 1, 2026.

### K. Plaintiff's Efforts to Obtain Legal Counsel

50.    Plaintiff diligently sought legal representation for this matter. Plaintiff contacted multiple consumer protection attorneys through the National Association of Consumer Advocates and engaged in direct consultations with law firms specializing in consumer protection.

51.    Despite the strength of the underlying claims, Plaintiff was unable to secure representation due to the specialized and nascent nature of EFTA litigation against cryptocurrency exchanges. At least one law firm that consulted with Plaintiff acknowledged the "straightforward facts and evidence" but declined representation based on practical resource constraints.

52.    Plaintiff brings this action pro se, not because the legal claims are weak, but because the intersection of the EFTA and cryptocurrency regulation remains a developing area that few private practitioners have elected to enter.

### CAUSES OF ACTION

### COUNT I
**Failure to Investigate Unauthorized Electronic Fund Transfers**
*(Violation of 15 U.S.C. § 1693f and 12 C.F.R. § 1005.11(c)(1))*

53.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

54. Under 12 C.F.R. § 1005.11(c)(1), when a financial institution receives oral or written notice of an error from a consumer, the institution shall investigate the error, determine whether an error has occurred, and report the results to the consumer within 10 business days.

55. Plaintiff provided Kraken with timely notice of unauthorized electronic fund transfers on or about May 9, 2025.

56. Kraken failed to investigate the reported unauthorized transfers within 10 business days, or at all. Instead, Kraken closed Plaintiff's support ticket without investigation.

57. Plaintiff provided a second written notice of the error on March 1, 2026, through his formal EFTA demand letter. Kraken again failed to investigate within 10 business days, or at all.

58. Kraken's failure to investigate constitutes a violation of 15 U.S.C. § 1693f and 12 C.F.R. § 1005.11(c)(1).

## COUNT II
### Failure to Provisionally Credit Plaintiff's Account
*(Violation of 15 U.S.C. § 1693f and 12 C.F.R. § 1005.11(c)(2))*

59. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

60. Under 12 C.F.R. § 1005.11(c)(2), if a financial institution is unable to complete its investigation within 10 business days, it must provisionally credit the consumer's account for the amount of the alleged error, including interest where applicable, within 10 business days of receiving the error notice.

61. Kraken did not complete its investigation within 10 business days because it never commenced an investigation at all.

62. Kraken did not provisionally credit Plaintiff's account for $71,717.65, or any amount, at any time.

63. Kraken's failure to provisionally credit Plaintiff's account constitutes a violation of 15 U.S.C. § 1693f and 12 C.F.R. § 1005.11(c)(2).

## COUNT III
### Failure to Provide Adequate Written Explanation of Findings
*(Violation of 15 U.S.C. § 1693f and 12 C.F.R. § 1005.11(d))*

64. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

65. Under 12 C.F.R. § 1005.11(d), upon completing its investigation, a financial institution must report the results to the consumer within three business days, including a written explanation of its findings. If the institution determines that no error occurred, it must include a notice of the consumer's right to request the documents relied upon in making the determination.

66. In response to Plaintiff's report of unauthorized transfers, Kraken stated that "all transactions are final." This statement does not satisfy the requirements of 12 C.F.R. § 1005.11(d) because it is not the product of an investigation into Plaintiff's specific allegations.

67. Regulation E requires that a financial institution first investigate the reported error, then provide findings based on that investigation. A blanket policy statement that "all transactions are final" reflects no investigation, no analysis of the specific transactions at issue, and no consideration of whether the transfers were in fact unauthorized. It is a categorical refusal to comply with the error resolution procedures mandated by federal law.

68. Furthermore, to the extent that "all transactions are final" is derived from Kraken's Terms of Service, it constitutes a contractual provision that purports to waive Plaintiff's rights under the EFTA. Such a provision is void and unenforceable under 15 U.S.C. § 1693l.

69. Kraken's failure to provide a written explanation of findings based on an actual investigation constitutes a violation of 15 U.S.C. § 1693f and 12 C.F.R. § 1005.11(d).

## COUNT IV
### Imposition of Liability in Excess of Statutory Limits
### *(Violation of 15 U.S.C. § 1693g)*

70. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

71. Under 15 U.S.C. § 1693g(a), a consumer's liability for an unauthorized electronic fund transfer shall not exceed $50 if the consumer notifies the financial institution within two business days after learning of the loss or theft.

72. Plaintiff notified Kraken of the unauthorized transfers on May 9, 2025 — the same day they occurred — well within two business days.

73. Despite Plaintiff's timely notification, Kraken has held Plaintiff liable for the entire $71,717.65 in unauthorized transfers, which is $71,667.65 in excess of the maximum $50 liability permitted by 15 U.S.C. § 1693g(a).

74. Kraken's imposition of liability on Plaintiff in excess of the statutory limit constitutes a violation of 15 U.S.C. § 1693g.

## COUNT V

**Improper Collection of Amounts Arising from Unauthorized Activity**
*(Violation of 15 U.S.C. § 1693f, § 1693g, and § 1693h)*

75.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

76.    During the robbery, the criminal assailants deposited $5,000.00 into Plaintiff's Kraken account from an unknown third-party source without Plaintiff's authorization. This deposit was part of the criminal activity and was not initiated by, authorized by, or beneficial to Plaintiff.

77.    Kraken has held Plaintiff personally liable for the consequences of this unauthorized deposit by placing Plaintiff's account in a negative balance of $4,852.87.

78.    Kraken has threatened to send this $4,852.87 balance to collections, which would subject Plaintiff to additional financial harm, including potential damage to his credit.

79.    Under the EFTA, a consumer is not liable for unauthorized electronic fund transfers beyond the limits set forth in 15 U.S.C. § 1693g. A financial institution bears the loss for unauthorized transfers and may not impose liability on the consumer for activity the consumer did not authorize. 15 U.S.C. § 1693h.

80.    Kraken's attempt to collect $4,852.87 from Plaintiff arising from unauthorized criminal activity constitutes an additional violation of the EFTA.

**COUNT VI**
**Unlawful Restriction of Account Access**
*(Violation of 15 U.S.C. § 1693f and § 1693h)*

81.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

82.    Kraken has blocked Plaintiff's access to his account, preventing Plaintiff from viewing his account information, transaction history, or any remaining assets.

83.    Kraken blocked Plaintiff's account access as a consequence of the unauthorized activity carried out by criminal third parties, not as a result of any action by Plaintiff.

84.    By blocking Plaintiff's access to his own account based on unauthorized third-party activity, while simultaneously failing to investigate the unauthorized transfers or credit Plaintiff's account, Kraken has caused additional harm to Plaintiff in violation of the consumer protections of the EFTA.

**COUNT VII**

**Willful Noncompliance with the EFTA**
*(15 U.S.C. § 1693m)*

85.   Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

86.   Kraken's violations of the EFTA were willful. Rather than comply with its statutory obligations, Kraken deliberately chose to close Plaintiff's support ticket without investigation, refuse provisional credit, impose liability on Plaintiff for the actions of criminals, threaten Plaintiff with collections, and lock Plaintiff out of his account.

87.   Kraken's willful noncompliance is evidenced by, among other things:

a.   Kraken's closure of Plaintiff's support ticket without any investigation despite clear notification of unauthorized transfers;

b.   Kraken's placement of Plaintiff's account in a negative balance for a fraudulent deposit made by criminals;

c.   Kraken's threat to send the amount to collections, compounding the harm to a crime victim;

d.   Kraken's blocking of Plaintiff's account access;

e.   Kraken's complete failure to respond to Plaintiff's formal EFTA demand letter sent March 1, 2026;

f.   Kraken's complete failure to respond to Plaintiff's follow-up non-response letter sent March 16, 2026;

g.   Kraken's continued noncompliance despite the filing of two CFPB complaints.

88.   Kraken's willful noncompliance entitles Plaintiff to enhanced damages under 15 U.S.C. § 1693m.

**PRAYER FOR RELIEF**

89.   WHEREFORE, Plaintiff Jacob Irwin respectfully requests that this Court enter judgment in his favor and against Defendant Payward Interactive, Inc. d/b/a Kraken, and award the following relief:

a.   Actual damages sustained by Plaintiff as a result of Defendant's EFTA violations, in an amount not less than $71,717.65, representing the full value of the unauthorized electronic fund transfers from Plaintiff's account;

b.   Additional actual damages in the amount of $4,852.87, representing the improper collection demand imposed on Plaintiff arising from the unauthorized fraudulent deposit;

c.   Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. § 1693m(a)(2)(A);

d.   A declaratory judgment that Defendant violated the EFTA and Regulation E as alleged herein;

e.   An order requiring Defendant to withdraw the $4,852.87 collection demand against Plaintiff and correct any adverse information reported to credit bureaus or other third parties;

f.   An order requiring Defendant to restore Plaintiff's full access to his account;

g.   An order requiring Defendant to conduct the investigation required by 12 C.F.R. § 1005.11(c) and to provide Plaintiff with a written explanation of findings as required by 12 C.F.R. § 1005.11(d);

h.   Costs of this action, including the filing fee, pursuant to 15 U.S.C. § 1693m(a)(3);

i.   Reasonable attorney's fees, if applicable, pursuant to 15 U.S.C. § 1693m(a)(3);

j.   Pre-judgment and post-judgment interest as allowed by law;

k.   Such other and further relief as this Court deems just, proper, and equitable.

## **DEMAND FOR JURY TRIAL**

90.   Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable in this action.

Respectfully submitted,

_____

**JACOB IRWIN,** *Pro Se Plaintiff*

14913 NE Sorrel Dr

Vancouver, WA 98682

Email: jcpdx.dev@gmail.com

Telephone: (503) 710-5277

Date: 04/15/2026

## **VERIFICATION**

I, Jacob Irwin, am the Plaintiff in this action. I have read the foregoing Complaint and know the contents thereof. The factual allegations set forth in this Complaint are true and correct to the best of my knowledge, information, and belief, formed after reasonable inquiry. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: 04/15/2026

Jacob Irwin